## Case No. 1,365.

### The BETSY.

[1 Mason, 354.] [1]

Circuit Court, D. Massachusetts.   May Term, 1818.

CUSTOMS DUTIES—VIOLATION OF LAWS—FORFEIT-URE—ACT OF 1799—PLEADING — FOREIGN VESSELS AND GOODS.

1. A libel for a statute forfeiture should substantially agree with the terms of the statute, otherwise it is bad.

2. In a libel on the 50th section of the revenue act of the 2d of March, 1799, c. 128, [1 Story's Laws, 617; 1 Stat. 665, c. 22,] it is not necessary to allege the goods to be of foreign growth or manufacture.

[Cited in Jackson v. U. S., Case No. 7,149.]

3. The 27th section of the revenue act of the 2d of March, 1799, c. 128, [1 Stat. 648, c. 22,] comprehends foreign as well as American vessels, bound to the United States.

4. Condemnation on the facts.

[Followed in The Abby, Case No. 14.   Distinguished in The Active, Id. 33.]

[Appeal from the district court of the United States for the district of Massachusetts.

[In admiralty.   Libel against the schooner Betsy, (Drinkwater, claimant.)   A decree of forfeiture was entered, (nowhere reported.) Claimant appeals.   Affirmed.]

This was a case of seizure for the violation of the 27th and 28th sections of the revenue collection act of the 2d of March, 1799, c. 128. The libel of information charged, that on the 10th day of September, 1817, a certain ship or vessel, whose name was as yet unknown, laden with a cargo, consisting of various articles of goods, wares, and merchandises, "of foreign growth and manufacture, which were liable to the payment of duties on importation into the United States," the said vessel being then and there bound to the United States from a foreign port, did arrive within four leagues of a district of the United States; and that, after her arrival as aforesaid, on the same day, and before the said ship had come to the proper place for the discharge of her cargo, or any part thereof, a part of the cargo of the said vessel, to wit, forty-two pipes of rum, a quantity of logwood, and various other articles, were, without any unavoidable accident, necessity, or distress of weather, unladen out of said vessel; and being so unladen, were afterwards, on the same day, without any unavoidable accident, necessity, or distress of weather, on the high seas, and

[1] [Reported by William P. Mason, Esq.]

"within four leagues of a collection district of the United States," put and received forthwith into the said schooner Betsy, contrary to the form of the statute, &c.

The claim contained a general denial of the forfeiture.   At the hearing in the district court of Massachusetts, a decree of condemnation was pronounced; from which decree an appeal was taken to this court.

The cause was argued by J. T. Austin, for the claimant, and by G. Blake, Dist. Atty., for the United States; but as it turned principally on matter of fact, it is unnecessary to report it at large.

STORY, Circuit Justice.   The libel in this case does not exactly conform to the language of the sections of the statute, on which it is founded.   To bring the case within the statute, the unlading must be within the limits of a district of the United States, or within four leagues of the coast of the United States. The allegation propounds in one place, that the arrival of the ship was within four leagues of a district of the United States; and in another place, that the receiving into the Betsy was within four leagues of a collection district of the United States.   The limits of a district, and of the coast of the United States are not, or at least may not be, coincident.   Many of the districts of the United States include bays and other waters of the sea.   But the coast of the United States, as used in this statute, is properly the shore of the sea, littus maris, or the costera maris of our ancient juridical writers. Spell. Glos. 192.   I shall, however, allow this inaccuracy to be amended, at the same time suggesting, that the libel is, in some respects, more special than the statute requires.   It does not seem necessary to assert, that the goods are of foreign growth or manufacture, or liable to the payment of duties.   The statute only requires, that they should have been brought from a foreign port.   And in some cases it may be perilous to tie up the allegation within narrower limits, than the law itself has prescribed.

Upon the first examination of this case, a doubt occurred to my mind, whether the 27th section of the act applied to any foreign vessel in the predicament of that before the court.   The doubt arose in this way.   The 23d section of the act declares, that no goods, wares, or merchandise shall be brought into the United States from any foreign port or place in any ship or vessel, belonging in whole or in part to a citizen or citizens, inhabitant or inhabitants of the United States, unless the master, &c. shall have on board a manifest, the form of which is prescribed by the same section; and it then provides, that if merchandise shall be imported by citizens or inhabitants of the United States in vessels, other than of the United States, the manifests shall be in a similar form, except

as to the description of the vessel. The 25th section requires the master of any ship or vessel, belonging to a citizen or citizens of the United States, laden with goods aforesaid, and bound to a port or place in the United States, on his arrival within four leagues of the coast thereof, or within any of the bays, &c. thereof, upon demand to produce such manifest, &c. to such officer of the customs, as shall first come on board his vessel for his inspection. The 26th section declares, that if any master of any ship or vessel, "laden as aforesaid," and bound to any port or place in the United States, shall not, upon his arrival within four leagues of the coast thereof, or within the limits of any district thereof, &c. produce such manifest to the proper officer upon demand, &c. he shall forfeit five hundred dollars. Then comes the 27th section, which among other things declares, that "if after the arrival of any ship or vessel, so laden with goods as aforesaid, and bound to the United States, within the limits of any of the districts of the United States, or within four leagues of the coast thereof, any part of the cargo of such ship or vessel shall be unladen for any purpose whatever from out of such ship or vessel, before such ship or vessel shall come to the proper place for the discharge of the cargo," &c. &c. the goods, &c. so unladen and unshipped shall be forfeited, except in the case of some unavoidable accident, necessity, or distress of weather. And the 28th section declares, that if any goods so unladen from on board such ship or vessel, shall be put or received into any other ship or vessel, or boat, except in the case of such accident, necessity, or distress as aforesaid, the ship, boat, or vessel, in which they shall be so put, shall be forfeited. Unless, therefore, there be an unlawful unlading within the 27th section, no forfeiture can be inflicted under the 28th section. The question then is, what ship or vessel is within the 27th section, the descriptive words being any ship or vessel, "so laden with goods as aforesaid." It is very clear, that the preceding sections had principally, if not altogether, in view American ships, or foreign ships having on board goods on American account. And the doubt was, whether the words of reference, "so laden with goods as aforesaid," did not limit the description to vessels within the purview of those sections. On farther consideration, however, I am satisfied, that the doubt cannot be sustained. The words in the 27th section are, "any ship or vessel," dropping the additional description in the 23d, 24th, and 25th sections, "belonging in whole or in part to a citizen or citizens;" which omission would seem to indicate some change of intention. And the words "so laden with goods as aforesaid," must be construed, as the words "laden with goods as aforesaid," in the 25th section. And it is clear that, in that section, they must be interpreted to mean

the goods specified in the 24th section; that is to say, goods imported or brought from any foreign port or place. So that the 27th section in fact should read, "If after the arrival of any ship or vessel, laden with goods, brought from any foreign port or place, and bound to the United States, within the limits of any district of the United States, or within four leagues of the coast thereof, any part of the cargo shall be unladen," &c. The language is here sufficiently broad to comprehend any vessel, of any description whatever, foreign or American, bound to the United States. And the policy of the act equally applies to all vessels; and indeed more strongly to foreign vessels; since frauds committed by them in evasion of the revenue laws are less easily detected, than like frauds are under the regulations applicable to American vessels. It is farther proper to be considered, that foreign vessels with goods on board, imported by citizens of the United States, are within the express purview of the 23d section, and therefore of the 27th section; and it cannot be presumed, that the legislature could have contemplated a discrimination, which should include them, while it excluded foreign vessels laden on foreign account from the grasp of the 27th section. The language of the statute, therefore, being sufficiently comprehensive, and the mischief being the same, I cannot attempt to sustain an exception, not warranted by the terms or the spirit of the statute.

Having disposed of this preliminary point, we may now advance to the objections, which have been urged on behalf of the claimant.

The first objection is, that the ship was not bound to the United States. It turns out in evidence, that she was a Spanish ship, not originally bound to the United States, but captured by a privateer, under the flag of the government of Buenos Ayres. She came to an anchor in Huzzy's sound, within a district of the United States. Her prize-master was a citizen of the United States, belonging to Portland; and the unlading was with the assent of the prize-master, in concert with some inhabitants of Portland, after her departure from the port, where she had anchored, for the obvious purpose of having the cargo imported into the United States, and yet avoiding the expense of alien duties. I cannot under such circumstances doubt, that her destination was really, after capture, for the United States; and that her arrival off Portland was voluntary, and with an intent, per fas aut nefas, to dispose of the cargo in the United States.

A second objection is, that the unlading was not within four leagues of the coast of the United States; and a third, that the unlading was from necessity. There is nothing in the facts of the case, that affords a shadow of ground to sustain either of these objections. The whole enterprise of the prize

crew was to smuggle, or at least to land the cargo in the United States, in such manner as should best comport with their own interests; and it was executed without the slightest regard to our laws, any farther than as those laws might afford them plausible pretences or excuses more effectually to cover their own designs.

These objections failing, the Betsy must be condemned; for there can be no doubt, that her owner and master acted with a full knowledge of all the facts, and co-operated in the original design, by receiving the goods on board immediately from the ship. Decree affirmed with costs.